FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

2013 JUN 20  A 10: 08

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

SCOTT N. CARLSON
523 2nd Street Southeast
Washington, DC 20003

    Plaintiff,

    v.

Civil Action No. _1: 13cv751_
    (LOG /TRJ)

DYNCORP INTERNATIONAL, INC.
3190 Fairview Park Drive
Suite 700
Falls Church, Virginia 22042

    Defendants.

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1.    This is a complaint by Scott N. Carlson against his former employer, DynCorp International, Inc. ("**Defendant**") for damages and reinstatement for retaliatory discharge in violation of the False Claims Act, 31 U.S.C. § 3730(h).

### JURISDICTION & VENUE

2.    This Court has federal question jurisdiction over this action pursuant to Article III of the United States Constitution and 28 U.S.C. § 1331.

3.    Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 as the facts relevant to this matter occurred at Defendant's Falls Church, Virginia office.

### PARTIES

4.    Scott N. Carlson, Esq. is resident of the District of Columbia and member of The District of Columbia Bar. Mr. Carlson was employed by Defendant until April 17, 2013, when it terminated his employment because he had brought attention to timekeeping practices that he

believed constituted making false claims against the United States Government in violation of 31 U.S.C. § 3729.

5.      Defendant DynCorp International, Inc. is a Delaware Corporation with its principal Virginia office located at 3190 Fairview Park Drive, Suite 350, Falls Church, Virginia.  Defendant employed Mr. Carlson until April 17, 2013 when it discharged him from employment because he had brought attention to timekeeping practices that he believed constituted making false claims against the United States Government in violation of 31 U.S.C. § 3729.

## FACTS

*Hiring & Rate of Pay*

6.      Before being employed by Defendant, Mr. Carlson worked at the United States Department of State.

7.      In early 2012, Defendant's subsidiary Casals and Associates recruited Mr. Carlson to work as Defendant's Director of Stabilization and governance.  Mr. Carlson worked in what Defendant termed the Development Business Area Team ("**DEVBAT**").

8.      Mr. Carlson accepted a position with Defendant on April 17, 2012 at a rate of pay of $164,000 per annum plus incentive pay as governed by Defendant's Management Incentive Plan ("**MIP**").

9.      At the end of 2012, Defendant paid to Mr. Carlson incentive pay equal to a prorated twenty percent of Mr. Carlson's annual rate under the MIP because Mr. Carlson had received a positive performance review.

10.     At the end of the 2013 business year, Mr. Carlson would have earned the same twenty percent incentive pay as he performed admirably until he was discharged in April.

11.     At the end of the 2013 business year, Mr. Carlson would also have earned an additional twenty percent incentive pay under the MIP for bringing in new business.

*Mr. Carlson Observes What He Believes To Be Fraudulent Billing Practices*

12.     Defendant is subject to full Cost Accounting Standard ("**CAS**") coverage under 48 C.F.R. § 9903.201-2(1).

13.     CAS 410 requires Defendant to allocate business unit general and administrative expenses ("**overhead**") to a "separate indirect cost pool which shall be allocated to final cost objectives." 48 C.F.R. § 9904.410-40.

14.     In December 2013, Defendant directed Mr. Carlson and others in his office to stop billing overhead expenses to an overhead charge code in Defendant's timekeeping system.

15.     Mr. Carlson objected to this, believing it to be a violation of CAS 410.

16.     Defendant then directed Mr. Carlson and others in his office to bill overhead to a specific charge code in Defendant's timekeeping system, the "Zimbabwe Unbillable Code."

17.     The Zimbabwe Unbillable Code is left over from a former project.

18.     Mr. Carlson objected to using the Zimbabwe Unbillable Code because he believed that allocating overhead costs to the Zimbabwe Unbillable Code violated CAS 410.

19.     Mr. Carlson also objected on the grounds that he believed using the Zimbabwe Unbillable Code violated CAS 401, which requires consistency in accumulating costs.

20.     From the day that Defendant directed Mr. Carlson to bill overhead costs to the Zimbabwe Unbillable Code until the day he was discharged, Mr. Carlson would engage appropriate colleagues in an attempt to convince Defendant to "fix this now to get legally compliant."

21.     Many of these conversations happened over email.

22.     On April 3, 2013, Mr. Carlson drafted a memorandum to Christopher Bellomy, of Defendant's in-house counsel (the "**overhead expenses memo**").

23.     In the overhead expenses memo, Mr. Carlson continued to press Defendant on the impropriety of allocating overhead costs to the Zimbabwe Unbillable Code.

24.     On April 3, 2013, Mr. Carlson participated in a review of corporate practices with Defendant's internal counsel Chris Bellomy and Jonathan Merricks of Defendant's Compliance Department.

25.     In this review meeting, Mr. Carlson continued to express concern about the use of the Zimbabwe Unbillable Code.

*Defendant Discharges Mr. Carlson*

26.     On April 17, 2013, Defendant discharged Mr. Carlson from employment.

27.     Defendant told Mr. Carlson that his position had become redundant due to a "reorganization" of DEVBAT.

28.     But less than one month after discharging Mr. Carlson, Defendant recruited another person, Jeffrey Walker, to fill the functional role Mr. Carlson filled.

29.     Defendant recruited Mr. Walker to fill the spot Mr. Carlson occupied on a bid that Mr. Carlson drafted and delivered to the United States Government on the date of his dismissal.

30.     Mr. Carlson was specifically listed in this bid as a Director in the DEVBAT, as well as the key personnel on the bid, Senior Technical Advisor.

31.     Additionally, defendant provided Mr. Carlson with a list of all persons, by age, office location, and title, whom Defendant alleged to have discharged in the reorganization of DEVBAT.

32.     That list contained only two persons.

33.   According to that list, the first post that Defendant alleges became redundant was a Program Operations Director position in Falls Church, Virginia held by a person 50 years of age.

34.   Mr. Carlson was a Program Operations Director in Falls Church and is 50-years old.

35.   The only other post, according to the list, that Defendant alleges became redundant was a Program Director position in Falls Church, Virginia held by a person 63-years of age.

36.   There is only one 63-year-old person who worked in the DEVBAT in Falls Church as a Program Director, Eduardo Fernandez.

37.   Mr. Carlson himself participated in and supervised the discharge of Mr. Fernandez.

38.   Mr. Fernandez was discharged well before Mr. Carlson.

39.   Mr. Fernandez's discharge was not part of any larger reorganization of DynCorp.

40.   When Defendant discharged Mr. Carlson, it did so because Mr. Carlson had raised issues about the propriety of Defendant's use of the Zimbabwe Unbillable Code.

## COUNT I: RETALIATION
## IN VIOLATION OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3730(h)

41.   Plaintiff re-alleges every allegation.

42.   Mr. Carlson engaged in protected activity when he fought within Defendant's corporate structure to fix what he perceived as use of the Zimbabwe Unbillable Code in violation of CAS 401 and 410.

43.   Mr. Carlson specifically told Defendant that he believed that using the Zimbabwe Unbillable Code was illegal.

44.   Defendant must routinely disclose to the United States Government its cost allocations, including overhead costs.

45.   Additionally, Defendant regularly certifies to the government, as it did in the bid referenced in paragraph 29 of this complaint, that it is in compliance with the CAS.

46.     Mr. Carlson knew this and thus reasonably believed that allocating overhead costs to the Zimbabwe Unbillable Code constituted making a false claim for payment to the United States Government in violation of The False Claims Act, 31 U.S.C. § 3729.

47.     Mr. Carlson made clear to Defendants the possibility of False Claims Act litigation by repeatedly describing, orally and in writing, the Zimbabwe Unbillable Code practice as illegal and not "legally compliant."

48.     Just fourteen days after Mr. Carlson's most strenuous objections to the use of the Zimbabwe Unbillable Code, Defendant discharged Mr. Carlson from employment.

49.     Defendant's retaliatory motive can be seen in its story that Mr. Carlson was discharged in a DynCorp reorganization that affected two-persons in the DEVBAT, one of whom Mr. Carlson had personally dismissed without any evidence that it related to a larger DynCorp reorganization.

## DEMAND FOR RELIEF

50.     Mr. Carlson demands reinstatement at his same seniority status, in accordance with 31 U.S.C. § 3730(h)(2).

51.     Mr. Carlson demands, in amounts to be determined at trial, two times the amount of back pay, interest on the back pay, and special damages that he suffered, including reputational and monetary damages, in accordance with 31 U.S.C. § 3730(h)(2).

52.     Mr. Carlson demands costs and reasonable attorney's fees.

53.     Mr. Carlson demands any other relief that the Court deems just and equitable.

PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully Submitted,

Jacob M. Small (VSB #84460)
J. Thomas Spiggle (VSB # 72022)
The Spiggle Law Firm, PLLC
4830B 31st St., S.
Arlington, Virginia 22206
(202) 449-8527 (phone)
(202) 540-8018 (fax)
jmsmall@spigglelaw.com
tspiggle@spigglelaw.com
ATTORNEYS FOR PLAINTIFFS